# FRIEDMAN *v.* GOODIN ET AL.

No. 2916

June 5, 1931.                                             299 P. 1017.

*John A. Jurgenson* and *Cooke & Stoddard,* for Appellant:

*C. E. Robins*, for Respondents:

## OPINION

By the Court, SANDERS, J.:

This is a controversy over the ownership of 25,000 shares of corporate stock of the Seven Troughs Gold Mines Company, registered on its corporate books in the name of James T. Goodin, who died intestate at his home in Lovelock, Nevada, on December 1, 1922. The contest is between L. A. Friedman, the holder of the unindorsed original certificate for the stock issued in the name of the deceased, and his brother and widow, as administrators of his estate. At the suit of Friedman the shares of stock were found to belong to the estate, and consequential relief was granted against the defendant corporation, who disclaimed having any interest in the stock. Friedman appeals.

It will be presumed that corporate stock registered in the name of deceased belonged to him. It will also be presumed that, where corporate stock is assigned to one person, a trust therein results in favor of the person who advances the consideration of the transfer. With these presumptions in mind we approach the consideration of the real question in this case, "Who is the owner of the stock?"

The facts are undisputed. The uncontradicted proof is that in 1921 and several years prior thereto Friedman was the dominate owner and manager of two mining corporations, one the Seven Troughs Mining Company, and the other the Seven Troughs Coalition Mining Company. Rather than consolidate the corporations, Friedman caused to be formed and organized a local corporation called the Seven Troughs Reorganized Mines Company, for the declared and avowed purpose of taking over the combined holdings of said corporations, which consisted of fifty or more lode mining

claims situate in the Seven Troughs Mining District, Pershing County, Nevada.

It is conceded that, in order to establish a private corporation under the local law, it is necessary to have at least three persons act as incorporators, and, under the law as it then stood, it was necessary to set out in the articles of incorporation the amount of subscribed capital stock with which the corporation would commence business, which could not be less than $1,000. It was also necessary, under the law, to set out in the articles or certificate of incorporation the name of each original subscriber to the capital stock and the amount subscribed by each.

The projected corporation was duly created on December 19, 1921, with a capital stock of 2,500,000 shares of the par value of 1 cent per share. To meet the requirements of the law, C. H. Jones, an employee of Friedman, A. V. Twigg, and James T. Goodin, a personal friend and business associate of Friedman's of long standing, at Friedman's special instance and request acted as incorporators of the company, and upon his solicitation subscribed in the articles the minimum amount of capital stock with which the corporation would commence business, namely, 100,000 shares of the par value of 1 cent per share. Jones subscribed for 50,000 shares, and Twigg and Goodin subscribed for 25,000 shares each. It is inferable from the evidence that it was the common understanding of all the parties that the stock so subscribed would be paid for by Friedman, he, as between the parties, being the beneficiary of the corporation. In so far as the record shows, neither incorporator nor subscriber had any interest in the corporations dominated by Friedman.

On January 25, 1922, the incorporators met in the office of Friedman at Lovelock, Nevada, and organized the corporation by the election of seven directors, including themselves and Friedman. On the adjournment of the organization meeting the directors met, elected officers, and adopted by - laws. The directors present were Jones, Twigg, Goodin, Friedman, and

H. E. Loufek. At this meeting Friedman, in pursuance of and to carry out the purpose for which the corporation was created and organized, made an offer to the directors in writing, which reads in part as follows: "Gentlemen: Subject to immediate acceptance I offer to convey, or secure conveyance, to you by good and sufficient deed, all of the right, title, estate and interest of the owners of, in and to the following mining claims in Seven Troughs Mining District, Pershing County, Nevada, to-wit, * * * for the sum of $56,250.00, or in lieu of cash money, at your option, I agree to accept 2,250,000 shares of stock in your company, subject to the following conditions: (This offer to be considered payment for subscriptions of organizers.) * * *" The board, by resolution, accepted that portion of the offer to transfer to Friedman 2,250,000 shares of stock in exchange for the conveyance to the corporation of the mining claims described in the offer, which constituted the entire holdings of said former corporations, with the understanding that the conveyance was taken and accepted as payment for the stock subscribed for in the articles of incorporation. It appears that, on the acceptance of the offer, certificates of the shares of stock so subscribed were then and there issued in the name of each subscriber for the respective amounts subscribed. It is inferable from the evidence that at the time of the issuance of the certificates they were detached from the stock certificate book and delivered to Friedman. It is conceded that certificate No. 3, for 25,000 shares, issued in the name of James T. Goodin, was not indorsed by him. These are the shares which form the basis of this suit.

On the death of Goodin, which occurred on December 1, 1922, the administrators of his estate, on November 19, 1923, filed with the court below, on the probate side thereof, their inventory of the estate which had come to their possession and knowledge. C. H. Jones, A. V. Twigg, and L. A. Friedman were duly appointed appraisers of the estate. On said date, to wit, November 19,

1923, the appraisers filed with the clerk of the court their appraisement of the property exhibited in the inventory. There was listed in the inventory, among other shares of stock, in this language: "25,000 shares Seven Troughs Reorganized Mines Co. $1,000.00." In so far as the record shows these shares of stock were not in the possession of the administrators at the time, and there is nothing to show that the shares were ever reduced to their possession.

In September, 1927, the name "Seven Troughs Reorganized Mines Company" was changed by amendment of its articles to that of "Seven Troughs Gold Mines Company."

No steps other than as stated were taken in the matter of the estate of James T. Goodin, deceased, until on July 23, 1929, when an order was made therein authorizing and directing the sale of all the personal property of the estate. On July 30, 1929, demand was made upon the secretary of the corporation to issue to the administrators a proper certificate showing the estate of James T. Goodin, deceased, to be the owner of 25,000 shares of the capital stock of the corporation, which demand was refused.

On August 21, 1929, Friedman began this suit in the court below, with the result above stated.

No claim was made upon the trial of the case that the unindorsed certificate issued in the name of Goodin was secretly or fraudulently delivered to Friedman on the date of its issuance, to wit, January 25, 1922. No claim was made that Friedman was not a holder of the certificate for value and in good faith. The case was tried and decided upon the theory that plaintiff sought to have the shares of stock impressed with a resulting trust in his favor, free from the claim or claims of the representatives of the estate of Goodin.

██ We are of the opinion that the evidence is not sufficient to support the finding that the shares of stock in suit belonged to the estate of James T. Goodin, deceased. On the contrary, we are of the opinion that the proof shows that it was the intention of the parties,

presumed, if not expressed, that the beneficial interest in the stock subscribed for by Goodin in the articles of incorporation on the solicitation of Friedman to meet the requirements of the law (Comp. Laws 1929, sec. 1602) was not to go or be enjoyed with the legal title. In such case, a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended. 3 Pomeroy Equity Jurisprudence (4th ed.), sec. 1031.

It is argued on behalf of the respondents that to effectuate a trust of the type which involves cases where shares of stock are assigned to one person, while the purchase price is paid by another person, it is absolutely indispensable that the payment should be actually made by the beneficiary at or before the time of transfer. From this description it is contended that the legal title to the stock in suit passed to Goodin on the date the corporation was created, to wit, on December 19, 1921, and, the consideration not having been furnished by Friedman for the stock until on January 25, 1922, some 40 days after title passed to Goodin, no resulting trust could arise. To effectuate a trust under the rule invoked, there must be a transfer. Under the terms of the disposition made of the stock, no transfer could have been made except by the proper officers of the corporation on its organization. There is no connection between the date on which a corporation is created and the date on which disposition is made of its stock.

If we were dealing with a question of "When does a subscription for stock in a projected corporation become valid and binding as between the corporation and the subscriber?" it might be said that there is a formidable array of authority to the effect that the formation of the corporation without any positive act of acceptance by the corporation of the subscription or its payment amounts to such an acceptance of the subscription as will render it binding and irrevocable. See annotations following Coleman Hotel Co. v. Crawford, 61 A. L. 'R. page 1459. Here, however, we are dealing with an

entirely different question. Counsel having invoked the rule, he should bring his facts within it and not so interpret it as to make it serve as a barrier to defeat its application. We think the argument advanced to defeat the application of the rule to the admitted facts falls by its own unreason.

■■ The learned trial court was influenced to refuse to establish a resulting trust in the stock for the reason that it appeared that Friedman, an interested party, appraised the stock as the property of the estate of James T. Goodin, deceased, which act of appraisement was inconsistent with his claim of trust. An inventory filed by an administrator is not conclusive evidence either for or against him, but is open to denial or explanation. McNabb v. Wixom, 7 Nev. 163. The same may be said of an appraisement. Friedman's appraisement of the stock as an officer of the court, under the circumstances, was not an act inconsistent with his claim of trust and was in no sense a disavowal or repudiation thereof.

■ The court was further influenced to refuse to establish the trust for the reason that upwards of five years elapsed after the death of Goodin before the bringing of the suit to establish and enforce a trust in the stock. Under the circumstances the listlessness of Friedman was not laches. According to his uncontradicted testimony, he was in ignorance of the fact that the certificate had not been indorsed by Goodin until in the year 1927, and that he had no knowledge or information that the stock was claimed by his representatives until in July, 1929. His suit was brought within 30 days thereafter. We are not disposed to condone the listlessness of either of the parties concerning stock claimed by Friedman to be worth $12,500, and claimed by the administrators of the estate of Goodin to be worth $25,000. This indifference operates as much against one party as the other. We have considered the bill of exceptions from every viewpoint presented by counsel. Our conclusion is that, under the facts and circumstances as disclosed by the record, the court erred in finding the stock in equity belonged to

the estate of James T. Goodin, deceased, and not to Friedman. The judgment in favor of the administrators of the estate of Goodin is therefore reversed, and the cause is remanded, with directions to the court below to enter judgment in favor of Friedman, in accordance with the prayer of his complaint.

It is so ordered.

## On Petition for Rehearing

November 25, 1931.

*Per Curiam:*

Rehearing denied.